**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JONATHAN BRESSER, JR., | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:24-CV-02034 |
| | ) | |
| THE CHICAGO BEARS FOOTBALL CLUB, INC., et al. | ) | Honorable Joan H. Lefkow |
| | ) | |
| | ) | |
| Defendants. | ) | |

**AMENDED MOTION TO STAY THE PROCEEDING AND/OR MOTION TO ENFORCE ATTORNEY'S LIEN**

Now comes the Plaintiff, Trent Law Firm, P.C., respectively requests this Court stay all proceedings and/or enforce Trent Law Firm, P.C.'s attorney's lien in this matter pending an imminent related action in Illinois state court. Plaintiff states as follows:

**BACKGROUND**

1.      Jonathan Bresser ("Plaintiff" or "Bresser") was employed as a paralegal at Trent Law Firm, P.C. ("Trent Law Firm") from August 21, 2021, to September 27, 2024. During this period, Marc Trent ("Trent"), the managing partner of Trent Law Firm, provided Bresser with professional mentorship and personal support, including assistance during family legal matters.

2.      On September 27, 2024, Bresser informed Trent that he was resigning from Trent Law Firm, citing dissatisfaction with the amount of attorney's fees Trent sought in connection with the settlement of the Bears case. Bresser's communication was delivered in a manner that suggested an attempt to pressure or coerce Trent regarding the fee arrangement, raising concerns of extortive intent.

3.     On October 19, 2024, he terminated Trent Law Firm's legal representation in a lawsuit against the Chicago Bears Football Club, Inc. ("Bears case"), after settlement had been reached but immediately before the settlement funds were expected to be disbursed. (Exhibit A).

4.     As part of his responsibilities, Bresser was expected to send an Attorney's Lien Notice ("Lien") to protect Trent Law Firm's fee interest in the Bears case settlement, a task he routinely handled for every contingency fee case. Despite understanding the importance of this duty, Bresser failed to send the Lien and falsely assured Trent that it had been completed, thereby jeopardizing the firm's right to recover its fees, which led Trent Law Firm to rely on Bresser's misrepresentation.

5.     On October 24, 2024, Trent Law Firm was conducting a forensic analysis of the firm's computers to assess the damage caused by Bresser and discovered an email communication between Bresser and Daniel Nikolic ("Nikolic"), a disgruntled former employee of Trent Law Firm, on the computer used by Nikolic during the course of his employment with Trent Law Firm. The email substantiated that Nikolic and another former employee who is also a law student with Bresser were conspiring with Bresser to undermine Trent and Trent Law Firm. (Exhibit B).

6.     Further analysis substantiated that on October 20, 2024, at 4:48 PM, Bresser emailed a 'Motion to Adjudicate' to Nikolic, which included an affidavit that Nikolic subsequently signed and returned. This affidavit, prepared by Bresser, contains numerous misrepresentations concerning the nature of the settlement and the involvement of Trent Law Firm. (Exhibit C & Exhibit D respectively).

7.     Following and leading up to his resignation, Bresser engaged in actions that significantly disrupted the operations of Trent Law Firm, including the deletion of critical digital files and changes to office system passwords including all files and the retainer agreement in

Bresser's case against the Bears, which impeded the firm's access to key information. These actions culminated in the preparation and distribution of the affidavit to Nikolic, reflecting Bresser's own narrative, and further suggest a coordinated effort to undermine Trent Law Firm's fee interests. The affidavit misrepresented key facts about the settlement and the firm's role, aligning with Bresser's earlier email statements about the Lien. (Exhibit D).

8.      Due to Bresser's actions and their impact on Trent Law Firm's ability to secure its fee interest, the firm will file a lawsuit against Bresser, his wife, and other related parties due to their alleged involvement in the Circuit Court of Cook County, Illinois. The state court action includes claims for breach of fiduciary duty, fraudulent misrepresentation, conspiracy, and other wrongful acts committed by Bresser during his employment. The allegations in the state court action include Bresser's preparation of the affidavit and the assertions made in his October 20, 2024, email to Nikolic, where he falsely claimed that Trent Law Firm's Lien was invalid. These actions are central to the determination of Bresser's liability for fraudulent misrepresentation and breach of fiduciary duty, which bear directly on the outcome of this federal case.

9.      The outcome of the imminent state court action is expected to address critical issues that directly impact this federal case, including the validity of Trent Law Firm's fee claims and the extent of Bresser's alleged misconduct.

**FACTS**

10.      Jonathan Bresser ("Plaintiff" or "Bresser") was employed by Trent Law Firm, P.C. ("Trent Law Firm") as a paralegal from August 21, 2021, to September 27, 2024. Despite lacking prior legal experience, Bresser was hired based on a recommendation and received extensive professional training and mentorship from Marc Trent, the firm's managing partner.

11.     Throughout his employment, Bresser benefitted from various forms of support provided by Trent, including health insurance coverage for himself and his wife, access to a vehicle for an extended period of time when his own car was unavailable, and assistance during family legal matters involving his parents.

12.     Bresser resigned without notice on September 27, 2024. Following his resignation, on October 19, 2024, he terminated Trent Law Firm's representation in the Bears case, despite the fact that a settlement had already been reached, but before the disbursement of settlement funds. (*See* Exhibit A)

13.     Bresser's failure to send the Lien, combined with his deceptive actions and interference with the firm's operations, suggests a calculated and premeditated effort to undermine Trent Law Firm's fee interest in the settlement of the Bears case. Bresser's actions are unprofessional, unethical, and unbecoming of someone that wants to become an attorney.

14.      Bresser's email on October 19, 2024, stated, in pertinent part, 'Given that this letter is dated today, subsequent to the termination of your representation, it is clear that Trent Law Firm has failed to provide Notice as required by statute and no lien exists.' This statement, combined with his failure to send the Lien, underscores a calculated effort to undermine the firm's fee interest. His statement specifically as to the fact that 'no lien exists' due to Trent Law Firm's purported failure to send timely notice underscores his pattern of deceit. (*See* Exhibit A).

15.     Bresser's October 20, 2024, email to Nikolic which attached the 'Motion to Adjudicate' and an affidavit that contained patently false statements and many misrepresentations, illuminates a conspiracy between Bresser and Nikolic and further substantiates Bresser's premeditated efforts to deny the firm's right to recover its fees. (*See* Exhibit B, Exhibit C, and Exhibit D respectively)

16.     Nikolic, shortly thereafter receiving Bresser's email, signed the affidavit and sent it back to Bresser. The affidavit had the exact same writing style and tone as Bresser, indicative that he is the author of the affidavit and not Nikolic. (*See* Exhibit D).

17.     Shortly before his resignation, Bresser took actions that disrupted the operations of Trent Law Firm, including deleting digital files related to ongoing cases, altering office system passwords without providing the updated credentials, and misusing the firm's PACER account to print over 1,000 pages of unrelated documents. These actions led to the deactivation of the firm's PACER account, impairing its ability to access court records and manage active cases, including the Bears case.

18.     After the settlement conference, Bresser's wife, who attended the conference, made remarks that further suggest premeditation. She stated to Bresser, "Now I know why I married you," and asked, "When are we getting the check?" These statements indicate awareness of the plan to secure the settlement funds without compensating Trent.

19.     The deletion of digital files, alteration of passwords, and withholding of credentials caused significant delays in the firm's other active cases. The restoration of access required additional expenses and time, further disrupting the firm's operations.

20.     As a result of Bresser's actions, Trent Law Firm incurred additional expenses and delays in restoring access to digital records and in managing other active cases. This disruption further hampered the firm's ability to effectively pursue its claims in the Bears case.

21.     After Trent became aware that Bresser never sent out the Lien, he sent an email attached with Trent Law Firm's Lien Letter to probe Bresser and give him notice. (Exhibit E). Bresser subsequently admitted that he did not send out the Lien and referenced and cited the case *Poreba v. Chandler* which Trent Law Firm handled and finalized shortly before Bresser's case

against the Bears making him familiar with the law surrounding attorney's liens and quantum meruit Bresser's reference to and citing of the case further substantiates a broader scheme and premeditation. (*See* Exhibit A).

22.     Video footage shows Bresser leaving the office at 10:20 a.m. on the day he resigned, having stayed in the office for over two hours after a 16-minute conversation with Trent at 8:00 a.m. During this time, Bresser engaged in sabotage and left the premises with documents belonging to Trent Law Firm in his possession.

23.     Bresser's Motion to Adjudicate the Lien and the accompanying Memorandum are reflective of Trent's work product that Bresser took from the office. Moreover, all employees, including Bresser, signed nondisclosure and confidentiality agreements.

24.     Upon information and belief, Bresser prepared the affidavits, as they reflect his own words, style, and narrative, suggesting that he directed the witnesses to make statements beneficial to him.

25.     Prior to initiating litigation, Trent Law Firm attempted to resolve the fee dispute with Bresser through informal discussions. Despite multiple attempts, Bresser refused to engage in meaningful negotiations, leaving the firm with no option but to seek judicial intervention to recover the fees owed.

26.     Bresser's failure to send the Lien, combined with his deceptive actions including his misrepresentations, interference with and sabotage of the firm's operations, suggests a calculated and premeditated effort to undermine Trent Law Firm's fee interest in the settlement of the Bears case and to undermine Trent's ability to recover its attorney's fees from the settlement.

27.     During discussions with colleagues, Bresser alluded to his financial difficulties and his anticipation of the settlement payout, suggesting a possible motive for terminating Trent Law Firm's representation to retain a larger share of the settlement proceeds for himself.

28.     Trent Law Firm will file a lawsuit in the Circuit Court of Cook County, Illinois, asserting claims for breach of fiduciary duty, fraudulent misrepresentation, conspiracy, and intentional interference with the firm's operations. This state court action directly addresses Bresser's conduct and its impact on Trent Law Firm's ability to recover its fees from the Bears case settlement.

29.     The outcome of the state court action is crucial to determining the validity of Trent Law Firm's fee claims and the extent of Bresser's alleged misconduct, which will directly affect the proceedings in this federal case.

30.     This matter was before the Honorable Joan Lefkow on October 23, 2024. Orders were entered referring this matter to Magistrate Judge Heather McShane. Counsel for the Bears indicated on the record that they would wait to take further action on this matter pending the referral to Judge McShane.

31.     On October 25, 2024, Trent Law Firm filed a Motion to Intervene on this matter as a preservation of its rights along with this Motion.

**<u>ARGUMENT</u>**

32.     The resolution of the state court action is crucial because it will likely determine factual issues pertaining to attorney fees that directly affect the federal case.

33.     The stay would maintain the status quo, ensuring that no settlement funds are disbursed until the state court has resolved the underlying issues of Bresser's conduct and the

validity of Trent Law Firm's fee interest. The stay would prevent any irreversible harm to Trent Law Firm's interests if the Court avoids taking actions that could potentially undermine the state court's resolution of key factual matters related to Bresser's responsibilities and actions and avoid a premature adjudication of the case.

34.     The stay ensures that this Court does not address issues that could later be impacted by state court findings, thus preserving fairness and consistency between the proceedings.

35.     If the state court finds that Bresser acted in bad faith or engaged in misconduct that affected the settlement, such findings could impact how the federal court views issues related to the disbursement or handling of settlement proceeds.

36.     Staying the proceedings ensures that any orders or decisions regarding the settlement in federal court are informed by the state court's resolution, thus preserving fairness and consistency.

37.     The state court action involves detailed factual findings about Bresser's conduct, including allegations of fraudulent misrepresentation, breach of fiduciary duty, conspiracy, and interference with Trent Law Firm's operations. These findings are crucial to understanding Bresser's motivations and actions, which could have implications for any remaining issues in the federal case, such as the nature of the settlement or the validity of actions taken by Bresser after terminating Trent Law Firm's representation.

38.     A stay would allow these factual findings to be established in state court first, providing a clearer framework for any remaining federal issues, should they arise. As such, Trent Law Firm requests that this Court stay all proceedings in this matter pending resolution of the related state court action or, in the alternative, enforce the Lien.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Trent Law Firm, P.C., respectfully requests that this Honorable Court grant the following relief:

a.    Issue an order staying all proceedings in this matter pending the resolution of the related state court action initiated by Trent Law Firm, P.C. in the Circuit Court of Cook County, Illinois, against Jonathan Bresser.

b.    Issue an order preventing the disbursement or transfer of any settlement proceeds from the Bears case until the state court action is resolved, thereby preserving Trent Law Firm's rights and ensuring that its attorney's lien is fully adjudicated before any distribution occurs;

c.    Should this Court determine that a stay is not warranted, issue an order enforcing Trent Law Firm's attorney's lien pursuant to the Illinois Attorney's Lien Act (770 ILCS 5/1) against the settlement proceeds of the Bears case, thereby protecting Trent Law Firm's entitlement to its fees earned through legal services provided prior to the termination of representation; and

d.    Grant any other relief that this Court deems just, equitable, and proper under the circumstances to protect Trent Law Firm's rights and interests in this matter.

Respectfully submitted,

*Marc P. Trent*

_____
Marc P. Trent (ARDC # 6324928)
Attorney for Trent Law Firm, P.C.

**TRENT LAW FIRM, P.C.**
2 TransAm Plaza Drive, Suite 300
Oakbrook Terrace, IL 60181
(630) 682-3100
*service@trentlawfirm.com*

**Certificate of Service**

      I, Marc Trent, an attorney, hereby certify that on 10/25/2024, I caused the foregoing **AMENDED MOTION TO STAY THE PROCEEDING AND/OR MOTION TO ENFORCE ATTORNEY'S LIEN** to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Respectfully submitted,

*Marc P. Trent*

_____

Marc P. Trent (ARDC # 6324928)
Attorney for Trent Law Firm, P.C.

**TRENT LAW FIRM, P.C.**
2 TransAm Plaza Drive, Suite 300
Oakbrook Terrace, IL 60181
(630) 682-3100
*service@trentlawfirm.com*

10/24/24, 3:44 PM                                Re: Termination of Representation - Marc P. Trent - Outlook

 Outlook                                                          *Exhibit A*

## Re: Termination of Representation

From Marc P. Trent <mtrent@trentlawfirm.com>
Date Sat 10/19/2024 2:16 PM
To   Jonathan Bresser <jonathanbresserjr@gmail.com>

Thank you, Jonathan. I'm looking forward to arguing this with you in court. Apparently, the mentorship
continues. I cannot speak on behalf of the Court, but I don't think the arrogant, condescending tone
coming from a law student will be held in a positive light by the Court. I also doubt falsely accusing me
of misrepresentations and illegal conduct will be taken very well. Most importantly, your actions of
trying to swindle your attorney out of fees right before distribution will probably not be taken in a
positive light. Especially by someone who wants to become an attorney. The good news is that the
years of litigation that is going to result because of your poor judgment and the parties I will involve in
that litigation will give you excellent experience.

This email does not require a response.

Best Regards and Good Luck,
Marc Trent

Get Outlook for iOS

**From:** Jonathan Bresser <jonathanbresserjr@gmail.com>
**Sent:** Saturday, October 19, 2024 1:42:33 PM
**To:** Marc P. Trent <mtrent@trentlawfirm.com>
**Subject:** Re: Termination of Representation

Marc,

No attorney client relationship exists and you cannot perfect a lien subsequent to termination. *See
Williamson v. Ortiz*, 2019 U.S. Dist. LEXIS 233899 (N. D. Ill. 2019) ("In short, the attorney's lien must
be perfected during the pendency of the attorney client relationship.")

Of course, you are fully aware of this as a result of your recent involvement and the extremely adverse
ruling you received in *Poreba v. Chandler*, 2024 IL App (2d) 230250-U (2d Dist. 2024).

Given that this letter is dated today, subsequent to the termination of your representation, it is clear
that Trent Law Firm has failed to provide Notice as required by statute and no lien exists.

I also find it necessary at this time to memorialize our September 27th phone conversation, in which
you stated that you were "unaware of an engagement agreement" and that an engagement
agreement "was not in your possession." I expect that you will immediately produce a copy of the
alleged Agreement which was never provided to me.

Your conduct, specifically your intentional misrepresentations made to me regarding our relationship by telling me to "sign a form engagement agreement" and "we'd work something out", was patently unethical and can be independently corroborated by several witnesses to the conversation. Should you choose to attempt to adjudicate this non-existent lien, I will be happy to issue subpoenas to said witnesses.

Jonathan

On Sat, Oct 19, 2024 at 9:15 AM Marc P. Trent <mtrent@trentlawfirm.com> wrote:
  Jonathan,

  See attached. The lien has been perfected via notice and settlement. Please advise if you have new counsel.

  Thank you,
  Marc Trent

  **From:** Jonathan Bresser <jonathanbresserjr@gmail.com>
  **Sent:** Saturday, October 19, 2024 12:21 AM
  **To:** Marc P. Trent <mtrent@trentlawfirm.com>
  **Subject:** Termination of Representation

  Marc,

  Your representation has been terminated. Your presence is not required at the upcoming status conference, where the Court will be notified that you have been instructed to withdraw. Please send an itemization for reasonable quantum meruit fees.

  Jonathan Bresser

 Gmail

Dan Nikolic <dannikolic1966@gmail.com>

## Motion To Adjudicate - Affidavit Enclosed
1 message

**Jonathan Bresser** <jonathanbresserjr@gmail.com>
To: dannikolic1966@gmail.com

Sun, Oct 20, 2024 at 4:28 PM

Please see attached.

 **10.20.24 Mtn to Adj Atty Lien.docx**
33K

*Exhibit C*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JONATHAN BRESSER, JR., | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 24-cv-2034 |
| | ) | |
| THE CHICAGO BEARS FOOTBALL CLUB, | ) | Hon. Joan H. Lefkow |
| INC., *et al.*, | ) | |
| Defendants. | ) | |

### MOTION TO ADJUDICATE ATTORNEY'S LIEN OF TRENT LAW FIRM, P.C.

NOW COMES the Plaintiff, Jonathan Bresser Jr. ("Bresser" or "Plaintiff"), *pro se*, and

for his Motion to Adjudicate Attorney's Lien of Trent Law Firm, P.C. ("Trent"), states as

follows:

1.      On March 11, 2024, Plaintiff filed the instant action against Defendants, which

remains pending and undetermined before this Court.

2.      On August 27, 2024, the Parties reached a binding and confidential settlement

agreement which is currently pending finalization.

3.      On October 19, 2024, due to an irretrievable breakdown in the Attorney-Client

relationship, Plaintiff terminated Trent's representation and directed him to file a Motion to

Withdraw. Plaintiff further requested Trent provide an itemization for reasonable attorney's fees.

*See Exhibit A.*

4.      Subsequent to Trent's termination, on October 19, 2024, Trent attempted to send

Notice of an Attorney's Lien by way of e-mail to Renee Koehler, counsel for Defendant, in a

purported effort to perfect an alleged attorney's lien. *See Exhibit B.* Trent further demanded that

Defendants "refrain from disbursing any funds to Jonathan Bresser or any third party without

first satisfying this lien."

5.      The Illinois Attorney's Lien Act, 770 ILCS 5/1, states, in pertinent part, that:

"Attorneys at law shall have a lien upon all claims, demands and causes of action, including all claims for unliquidated damages, which may be placed in their hands by their clients for suit or collection, or upon which suit or action has been instituted, for the amount of any fee which may have been agreed upon by and between such attorneys and their clients, or, in the absence of such agreement, for a reasonable fee, for the services of such suits, claims, demands or causes of action, plus costs and expenses. [...]

To enforce such lien, such attorneys shall serve notice in writing, which service may be made by registered or certified mail, upon the party against whom their clients may have such suits, claims or causes of action, claiming such lien and stating therein the interest they have in such suits, claims, demands or causes of action. Such lien shall attach to any verdict, judgment or order entered and to any money or property which may be recovered, on account of such suits, claims, demands or causes of action, from and after the time of service of the notice. On petition filed by such attorneys or their clients any court of competent jurisdiction shall, on not less than 5 days' notice to the adverse party, adjudicate the rights of the parties and enforce the lien."

6.      For the reasons set forth in Plaintiff's contemporaneously filed Memorandum in Support of Motion to Adjudicate Attorney's Lien of Trent Law Firm, P.C., Trent has materially failed to comply with the strict requirements of the Illinois Attorney's Lien Act and accordingly Trent's purported lien interests must be adjudicated to zero.

Respectfully submitted,

_/s/ Jonathan Bresser Jr._

Jonathan Bresser Jr.
1126 E. Algonquin Road #3A
Schaumburg, IL 60173
(630) 808-4190
_jonathanbresserjr@gmail.com_

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

**EASTERN DIVISION**

JONATHAN BRESSER, JR.,          )

              Plaintiff,    )

v.                         )     Case No. 24-cv-2034

                         )

THE CHICAGO BEARS FOOTBALL CLUB,  )     Hon. Joan H. Lefkow

INC., *et al.*,                   )

             Defendants.   )

**MEMORANDUM IN SUPPORT OF**
**MOTION TO ADJUDICATE ATTORNEY'S LIEN OF TRENT LAW FIRM, P.C.**

Plaintiff Jonathan Bresser, Jr. respectfully submits this Memorandum in Support of

Motion to Adjudicate Attorney's Lien of Trent Law Firm, P.C.

**FACTS**

1.     On March 11, 2024, Plaintiff filed the instant action against the Defendants,

which remains pending and undetermined before this Court.

2.     During the pendency of this matter up until September 27, 2024, Plaintiff was

employed by Trent Law Firm, P.C., Plaintiff's former counsel.

3.     On or about April of 2024, a meeting was held by and between Attorney Marc

Trent, Jonathan Bresser, Kenna Hogan, and Attorney Daniel Nikolic as part of the usual course

of business of Trent Law Firm, P.C. to discuss the firm's business.

4.     At said meeting, Marc Trent instructed Jonathan Bresser to "sign a form

engagement agreement" with respect to the instant matter and further stated that the parties

"would work something out" regarding a reasonable contingency fee at a future date.

5.     Said statements made by Marc Trent were independently witnessed by Kenna

Hogan and Attorney Daniel Nikolic. *See Group Exhibit A – Affidavits of Kenna Hogan and*

*Daniel Nikolic.*

6.     In reasonable reliance on Marc Trent's representations that Bresser and Trent would discuss a reasonable contingency fee at a later date, Bresser executed Trent Law Firm's standard contingency fee agreement which outlined a Forty Percent contingency fee. Because of Trent and Bresser's longstanding relationship, Bresser placed trust in Trent's promises to his detriment. Bresser placed the executed copy in the relevant case file and never received a copy of the alleged Agreement, neither blank nor countersigned by Trent.

7.     On August 27, 2024, the parties reached a binding and confidential agreement at a settlement conference conducted by Magistrate Judge Heather McShain.

8.     Thereafter, Plaintiff received Notice that Trent intended to seek a forty percent contingency fee with respect to the matter.

9.     Plaintiff never agreed to pay a contingency fee of forty percent with respect to the instant matter and executed the aforementioned Agreement in reliance on Trent's statement that Bresser and Trent would "work something out" regarding attorneys' fees at a future date.

10.     On September 27, 2024, Plaintiff confronted Trent regarding his prior promises and his breach of Plaintiff's trust via telephone. During said conversation, Trent denied having ever told Bresser to execute the form engagement agreement and stated that he didn't have the agreement in his possession. Bresser thereafter resigned from his position at Trent Law Firm.

11.     On October 19, 2024, at 12:21 AM, after receiving no communication from Trent for several weeks, Plaintiff terminated Trent's representation via e-mail. Plaintiff directed Trent to file a Motion to Withdraw and requested an itemization for reasonable fees. *See Exhibit B.*

12.     Thereafter, on October 19, 2024, on or about 9:15 AM, subsequent to his discharge, Trent sent correspondence via e-mail to Attorney Renee Koehler purporting to assert an Attorney's Lien in the amount of forty percent of the total settlement. *See Exhibit C.*

13.     Subsequently, Plaintiff once again requested a copy of the alleged engagement agreement that he executed, which to date Trent has refused to provide. *See Exhibit D.*

## ARGUMENT

Trent's attempts at delay and his interference in the finalization of this matter in an effort to enforce his purported lien rights are misguided and without merit. Despite Plaintiff having provided Notice to Trent of the inadequacy of his asserted lien, Trent nevertheless persists. Trent has materially failed to comply with the provisions of the Illinois Attorney's Lien Act (the "Act") in three distinct ways, as follows:

1. Trent has failed to comply with the plain language of the Act by failing to perfect its lien prior to termination of the attorney-client relationship;

2. Trent has failed to comply with the plain language of the Act by failing to serve a Notice of Lien on the party Defendants; and

3. Trent has failed to comply with the plain language of the Act by failing to serve a Notice of Lien via registered or certified mail.

As a general matter, "[b]ecause "the attorney's lien is a creature of statute, the Act must be strictly construed, both as to establishing the lien and as to the right of action for its enforcement." *People v. Philip Morris, Inc.*, 198 Ill. 2d 87, 95, 759 N.E.2d 906, 911, 259 Ill. Dec. 845 (2001). "Attorneys who do not strictly comply with the Act have no lien rights." *Id.*" *AXA*

*Corporate Solutions Assur. v. Hoff & Herran*, No. 12 C 8603, 2013 U.S. Dist. LEXIS 37338 at
*5 (N.D. Ill. Mar. 19, 2013).

### A. Trent has failed to comply with the plain language of the Act by failing to perfect its lien prior to termination.

"In Illinois, a client may discharge his attorney at any time, with or without cause." *Rhoades
v. Norfolk & W.R. Co.,* 78 Ill. 2d, 217, 227 (1979). An attorney discharged without cause is
entitled to be paid on a quantum meruit basis for services rendered prior to discharge as the
contingent fee contract no longer governs their relationship. *In re Estate of Callahan,* 144 Ill. 2d
32, 578 N.E.2d. 985 (1991).

In order to enforce a lien under the Act, the attorney must serve written notice upon the
adverse party, claiming the lien and stating his interest in the claim or cause of action.770 ILCS
5/1. The lien attaches from and after the time of the service of the notice. *Rhoades v. Norfolk &
W.R. Co.*, 78. Ill. 2d 217, 227, 399 N.E.2d 969, 973 (1979). Because the lien attaches to the cause
of action that the attorney is required to pursue, the lien must be perfected during the pendency
of the attorney-client relationship. *Rhoades,* 78 Ill. 2d at 227, 399 N.E.2d at 973. In *Rhoades,* the
court found that Plaintiff's former counsel was not entitled to the enforcement of its purported
attorney's lien, noting that the notice of lien was not served until "four days after Rhoades had
exercised his right to discharge the firm." *Id.* "Thus, by the time the firm attempted to perfect its
lien, there was no longer an underlying attorney-client relationship, a necessity for the perfection
of the attorney's lien." *Id.*

The circumstances in *Rhoades* are virtually identical to the instant matter. In this matter, it is
indisputable that Trent had not perfected his lien prior to the termination of the attorney-client
relationship, prompting him to attempt to send Notice to counsel for Defendant only subsequent

to his termination on October 19, 2024. Trent, of course, had actual knowledge of the requirements of the Act and maintained actual knowledge of his failure to comply with the requirements of same prior to his termination, causing him to prepare and send the above-referenced October 19, 2024 correspondence subsequent to discharge in a bad-faith effort to prevent the finalization of this matter. Had Trent believed he had properly perfected his lien prior to termination, he would not have been compelled to send the October 19, 2024 correspondence. Indeed, Trent is no stranger to fee disputes with his former clients and by extension the requirements of the Act (*See Poreba v. Chandler*, 2024 IL App (2d) 230250-U (Mar. 14, 2024) (attached herein as *Exhibit E*, *See* Ill. S.C.R. 23(e)), yet willfully failed to comply with same throughout the entirety of the attorney-client relationship which spanned roughly seven months. Only *after* Trent was discharged did he take any action in an effort to protect his lien interests, and such efforts must fail as a matter of law as a result of Trent's undue delay.

## B. Trent has failed to comply with the plain language of the Act by attempting to serve a Notice of Lien to Defendant's Attorney in lieu of the Party Defendants.

As a threshold matter, the Act provides that: "To enforce such lien, such attorneys shall serve notice in writing, which service may be made by registered or certified mail, *upon the party* against whom their clients may have such suits, claims or causes of action, claiming such lien and stating therein the interest they have in such suits, claims, demands or causes of action." 770 ILCS 5/1 (emphasis added).

Trent sent correspondence to Renee Koehler as counsel for Defendants on October 19, 2024, subsequent to the termination of his representation, stylized as a "Notice of Attorney's Lien." However, "Courts construing the Attorney's Lien Act have consistently concluded that service of a notice of attorney's lien upon a party's attorney, rather than the party itself, is insufficient. *See Am. Nat'l Bank & Trust Co. of Chi. V. Alps. Elec. Co.*, No. 99 C 6990, 2004 U.S. Dist. LEXIS

455, 2004 WL 783165 at *2 (N.D. Ill. Jan. 15, 2004); *In re Del Grosso*, 111 B.R. 178, 182

(Bankr. N.D. Ill. 1990); *Cazalet v. Cazalet*, 322 Ill. App. 105, 107, 54 N.E.2d 61, 63 (1944)

("[The attorney's lien] did not exist at common law but is purely a creature of the statute which

must be strictly followed in order to establish the lien and right of action against the defendant

for the enforcement thereof.")." *AXA Corporate Solutions Assur. v. Hoff & Herran,* 2013 U.S.

Dist. LEXIS 37338 at *5-6 (N.D. Ill. Mar 19, 2013).

It is believed that Trent will be unable to present evidence supporting the timely delivery of a

Notice of Attorney's Lien to each of the ten named Defendants in this matter because, upon

information and belief, such delivery has not occurred to date, and certainly did not occur during

the pendency of the attorney-client relationship. In *AXA Corporate Solutions Assur.*, Hoff &

Herran "served its [attorney's] lien on a law firm representing AXA, not on the entity itself." *Id.*

at *6. In granting the Plaintiff's Motion to Invalidate Hoff & Herran's attorney's lien, the court

found that "[b]ecause Hoff & Herran did not comply with the requirements of the Attorney's

Lien Act by mailing its notice of lien to AXA, its lien is invalid." *Id.* at *7. The *AXA* case is

analogous to the instant matter in that Trent, much like Hoff & Herran, has attempted to perfect

its attorney's lien by way of sending Notice to counsel for the Defendants in lieu of the parties

themselves. Although the instant matter has several other points of non-compliance with the Act

not present in *AXA*, the Court in *AXA* found that the material non-compliance with the Act by

failing to serve the party Defendants alone invalidated any purported lien interests asserted by

Hoff & Herran. Accordingly, Trent's asserted attorney's lien is void as a matter of law for its

willful failure to comply with the plain language of the Act.

**C. Trent has failed to comply with the plain language of the Act by attempting to serve a Notice of Lien exclusively via electronic mail.**

As aforementioned, the Act requires that service of a Notice of Attorney's Lien "be made by registered or certified mail." 770 ILCS 5/1. Because "the attorney's lien is a creature of statute, the Act must be strictly construed, both as to establishing the lien and as to the right of action for its enforcement." *Phillip Morris*, 198 Ill. 2d at 95. Those who do not strictly comply with the Act have "no lien rights." *Id.* Thus, Illinois courts have consistently held that proper service under the Act is strictly limited to personal service or service by registered or certified mail. *TM Ryan Co. v. 5350 S. Shore, LLC*, 361 Ill. App. 3d 352, 357 (1ˢᵗ Dist. 2005) (noting that the "majority of the cases construing the Act have held a lien arises under the statute only if notice is served by personal service or certified or registered mail on the party against whom the lien is sought"). "See *Unger v. Checker Taxi Co.*, 30 Ill. App. 2d 238, 241, 174 N.E.2d 219 (1961); *Cazalet* [*v. Cazalet*], 322 Ill. App. at 111-12; *McKee-Berger-Mansueto, Inc. v. Board of Education of City of Chicago*, 691 F.2d 828, 834-35 (7th Cir. 1982); *Preferred Management Installations, Inc. v. L.F.D. Holding Co.*, 2001 U.S. Dist. LEXIS 11057 at *4, No. 99 C 4849 (N.D. Ill. July 11, 2001); *Benvenuto v. Action Marine, Inc.*, 1993 U.S. Dist. LEXIS 5179 at *1-2, No. 91 C 7365 (N.D. Ill. April 20, 1993); *Williams v. State of Illinois*, 49 Ill. Ct. Cl. 109, 114-15 (Ill. Ct. Cl. 1996). See also *Rhoades v. Norfolk & Western Railway Co.*, 78 Ill. 2d 217, 227, 399 N.E.2d 969, 35 Ill. Dec. 680 (1979) (lien attaches from and after the time of service of notice required by the statute)." *TM Ryan Co.*, 361 Ill. App. 3d at 357.

In the instant matter, it is undisputed that Trent attempted to serve his Notice of Attorney's Lien upon counsel for Defendants exclusively via electronic mail. To date, no attempt has been made to effect service of the Notice of Attorney's Lien via any manner proscribed in the statute, and such failure, separate and apart from Trent's failure to attempt service on the party

Defendants and Trent's failure to attempt service during the attorney-client relationship, is solitarily fatal to Trent's attempts to enforce any alleged attorney's lien.

Indeed, the court in *TM Ryan Co.* recognized limited circumstances in which courts have upheld the validity of a lien where "proof of actual notice" to the party defendants exists. *Id.* citing *Cirrincione v. Johnson*, 184 Ill. 2d 109, 113 (1998) ("the parties were not prejudiced by the technical deficiencies because the defendant and his attorney had actual notice of the physician's lien; and any missing information was already known by defendant"); *Bloom v. Richardson*, 308 Ill. App. 320 (1941) ("defendant acknowledged receipt of the notice by return mail and informed plaintiff's client of receipt when settlement was made." *TM Ryan Co.*, 361 Ill. App. 3d at 357. Both *Cirrincione* and *Bloom* are entirely distinguishable from the instant matter.

Firstly, *Cirrincione v. Johnson* deals with the enforcement of a physician's lien under a former iteration of the Physician's Lien Act. 184 Ill. 2d at 111. In *Macaddino v. Inland Am. Retail Mgmt. LLC,* 2016 U.S. Dist. LEXIS 202496 (N.D. Ill. Jan 13, 2016), the Northern District of Illinois previously rejected arguments that the holding of *Cirrincione* permitting liberal construction of service requirements for a physician's lien should be applied to the Attorney's Lien Act with respect to the timeliness of service of a Notice of Attorney's Lien. In *Macaddino*, the court found "no authority indicating that the Illinois Supreme Court or any Illinois Appellate Court has indicated willingness to excuse on similar grounds the statutory requirement that an attorney's lien must be served during the existence of the attorney-client relationship" noting that "Lien service deadlines are, like statutes of limitations, typically strictly enforced." *Macaddino*, 2016 U.S. Dist. LEXIS 202496 at *3-4. In making this ruling, the court relied on the holding of *Elusta v. City of Chicago*, 760 F. Supp. 2d 792, 804-06 (N.D. Ill. 2010), which "not[ed] that strict compliance is required and allow[ed] only quantum meruit recovery where attorney's lien was

not perfected during the attorney-client relationship even though there was no prejudice to any party." *Macaddino*, 2016 U.S. Dist. LEXIS 202496 at *4.

*Bloom v. Richardson* is also inapplicable here. In *Bloom,* defendant "acknowledged receipt" of the Notice of Lien by return mail during the pendency of the attorney-client relationship, and later notified Plaintiff's client of receipt of the notice when the settlement was made. *Unger v. Checker Taxi Co.*, 30 Ill. App. 2d 238, 241 (1ˢᵗ Dist. 1961) (citing *Bloom,* 308 Ill. App. 230). No such occurrence exists here, as Trent did not even attempt to perfect his lien until subsequent to the termination of his representation. Accordingly, Trent's attempt to enforce his purported attorney's lien must fail as a matter of law.

### CONCLUSION

As a result of the foregoing, Plaintiff respectfully requests this Honorable Court enter an Order as follows:

A. Granting Plaintiff's Motion to Adjudicate Attorney's Lien of Trent Law Firm, P.C.;

B. Adjudicating the purported attorney's lien of Trent Law Firm, P.C. to zero;

C. Ordering Trent Law Firm, P.C. to provide an itemization for services under quantum meruit to Plaintiff;

D. Setting a future status date on this matter for finalization of the settlement and dismissal; and

E. Any such other and further relief this Court deems equitable and just.

Respectfully submitted,

_/s/Jonathan Bresser, Jr._

Jonathan Bresser, Jr.
1126 E. Algonquin Road #3A
Schaumburg, IL 60173
(630) 808-4190
_jonathanbresserjr@gmail.com_

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

*Exhibit D*

## EASTERN DIVISION

JONATHAN BRESSER, JR.,       )
                         Plaintiff,   )

v.                                 )     Case No. 24-cv-2034
                                )

THE CHICAGO BEARS FOOTBALL CLUB,   )     Hon. Joan H. Lefkow
INC., *et al.*,                       )
                    Defendants.   )

## AFFIDAVIT OF DANIEL NIKOLIC

I, Daniel Nikolic, being first duly sworn, depose and state as follows:

1.     I am an attorney licensed to practice law in the State of Illinois and was admitted to practice in 1991.

2.     I was employed by Trent Law Firm from approximately November 2023 to May 2024. I was terminated without Notice in May of 2024 after I complained to Marc Trent that he failed to process payroll in a timely or consistent manner, which caused me to bounce a check for rent to my landlord.

3.     Prior to my employment with Trent Law Firm, I was employed as a prosecutor for the Illinois Attorney General's Office for more than 30 years. During my time at the Attorney General's Office, I was responsible for the prosecution of criminal matters related to claims of WIC fraud. In addition, I was responsible for a wide scope of criminal prosecutions relating to sitting judges, States' attorneys, and other public officials.

4.     I was employed by Trent Law Firm during the filing of the instant case and my name is affixed to the Complaint.

5.     In April of 2024, I was present during a meeting held at the Trent Law Firm during the regular course of business. Also present at the meeting was Marc Trent, Kenna

Hogan, and Jonathan Bresser. Said meeting was conducted in the normal course of business for Trent Law Firm to discuss pending action items related to its management of client matters.

6.     During said meeting, Marc Trent instructed Jonathan Bresser to execute the standard form contingency agreement with respect to the instant matter and the firm's representation of Bresser in same. I personally witnessed Marc Trent instruct Bresser to execute said Agreement, and personally witnessed Marc Trent state to Bresser that they would discuss a reasonable contingency fee at a later date.

7.     I was concerned by this instruction and spoke to Marc Trent separately after the conclusion of the meeting. During this conversation, I asked Marc if he intended to take forty percent of the recovery as a contingency fee, which was the standard contingency fee listed on our form engagement agreement. I expressed to Marc that I believed attempting to take such a high contingency fee, especially after representing to Jonathan that the fee would be negotiated later, was unconscionable and immoral.

8.     In response, Marc stated to me that he intended to assert the standard contingency fee of forty percent because "it was what [he] deserved."

9.     I believe that Marc Trent made material misrepresentations to Bresser regarding the terms of their relationship in an effort to obtain an unreasonably large contingency fee that Bresser otherwise would not have agreed to.

10.    During my time at Trent Law Firm, I was personally involved in the instant litigation. I can attest that the vast majority of substantive work in this matter, including the necessary legal research, factual investigations, the drafting of the Complaint, the drafting of relevant settlement correspondence for which I participated in, and similar were performed by

necessary legal research, factual investigations, the drafting of the Complaint, the drafting of relevant settlement correspondence for which I participated in, and similar were performed by Bresser in his personal time outside of work. Bresser would typically present myself and Marc with completed work product relevant to this case which we would review and sign with little to no necessary changes.

11.     During my time at Trent Law Firm, Marc Trent was consistently absent from the office and frequently, in my view, overly expeditious in his review of work product with respect to this matter. On several occasions, Jonathan would ask me to review his work product carefully as Marc would frequently fail to independently verify Jonathan's stated positions and speed through the reviewal process in mere minutes.

12.     If called to testify, I would testify consistent with the above.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Daniel Nikolic

SUBSCRIBED and SWORN to before me
this _____ day of October, 2024.

_____
NOTARY PUBLIC

Exhibit E

# TRENT
## LAW FIRM P.C.

**Marc P. Trent**
2 TransAm Plaza Drive #300
Oakbrook Terrace, IL 60181
service@trentlawfirm.com
Office: (630) 682-3100
Fax: (630) 682-3554
www.trentlawfirm.com

**October 19, 2024**
**Via Email**
Ms. Renee Koehler
Neil & Leroy
20 South Clark Street, Suite 2050
Chicago, Illinois
rkoehler@nealandleroy.com

Re: **Notice of Attorney's Lien**
**Client:** Jonathan Bresser
**Case Number:** 1:24-cv-02034
Bresser v. The Chicago Bears Football Club, Inc.
**Lien Amount:** Forty Percent (40%)

Dear Ms. Koehler,

Pursuant to the Illinois Attorney's Lien Act, 770 ILCS 5/1, this letter serves as formal notice of an attorney's lien on behalf of Trent Law Firm, P.C., former counsel for Jonathan Bresser, in the above-referenced case.

Please be advised that our firm represented Mr. Bresser and provided legal services which contributed to the prosecution of the claims in this matter and settlement of said matter. Although our representation has been terminated, we are entitled to compensation for services rendered prior to the termination.

In accordance with the Illinois Attorney's Lien Act, we assert a lien in the amount of **forty percent (40%)** of any judgment, settlement, or other recovery obtained in favor of Jonathan Bresser in this matter. This lien applies to any funds recovered through settlement, judgment, or otherwise.

We hereby request that you withhold and honor this lien from any future disbursements related to this case, and kindly refrain from disbursing any funds to Jonathan Bresser or any third party without first satisfying this lien. Please provide confirmation that the lien has been received and will be honored.

The Illinois Attorney's Lien Act grants attorneys the right to a lien for services rendered, and the lien is perfected when written notice is served on the opposing party. Although our firm no longer represents Jonathan Bresser, the lien remains valid for services rendered prior to termination. The purpose of this notice is to protect our firm's interest in the case outcome and to ensure compliance with the requirements of the Act.

Should you have any questions or require additional information, please do not hesitate to contact me at 312-241-8383 or mtrent@trentlawfirm.com.

We look forward to your confirmation of receipt of this notice and your agreement to honor this lien.

Very truly yours,

*Marc P. Trent*

Marc P. Trent

1